409 A.2d 388

**In re ESTATE OF George PATRICK, Deceased.**

**Appeal of Mildred PATRICK and John Patrick, Executors.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1979.

Decided Dec. 21, 1979.

Joseph F. Flanagan, Thomas F. Burke, Jr., Wilkes Barre, Luzerne County, for appellants.

Paula G. Bregman, Harry Hiscox, Wilkes Barre, Luzerne County, for appellee, Linnie B. Patrick, executrix U/W of Joseph Patrick, deceased.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

George Patrick died on July 20, 1967 survived by six children. By paragraph Second of his will, testator provided:

> "D. All of my real estate situate in Clifton Township, Lackawanna County, and in Wayne County, Pennsylvania to my Executors, hereinafter named, to hold and manage for the benefit of my children and to be sold at such time and in such manner and for such price or prices as my said Executors shall determine to be for the best advantage of the beneficiaries of my estate, and the proceeds divided equally among all of my children and their issue with shares descending among those taking in different degrees in the manner set forth in Section 4 of the Pennsylvania Intestate Act of 1947, as amended."

Joseph Patrick, one of decedent's children, died without issue on August 17, 1971, four years after the death of George Patrick, but approximately six years before the executors distributed the proceeds from the sale of the paragraph D property.[1] On January 31, 1975, Linnie B. Patrick, executrix of the estate of Joseph Patrick, filed a claim with George Patrick's estate, for a one-sixth share of the proceeds. The executors of George Patrick's estate (appellants here), denied this claim.

■ Linnie B. Patrick, (appellee here), filed exceptions to the executors' first and partial account. The orphans' court concluded that the testator intended that Joseph Patrick's interest in the proceeds vest upon testator's death, and that

---

1. The executors of George Patrick's estate entered into a contract for the sale of the paragraph D property for the gross sales price of $210,500.00. This sale resulted in a net sale of approximately $186,-900.00. The sum of $50,000.00 was paid to the executors prior to December 31, 1973, the balance to be paid to the executors over the next ten years with interest at six (6%) per cent per year on the unpaid balance.

Joseph's estate is therefore entitled to a one-sixth share of his father's paragraph D property. We are satisfied that the orphans' court applied the correct test for ascertaining the testator's intent and correctly construed the testamentary disposition. Accordingly, we affirm the decree of the orphans' court sustaining the claim of Joseph Patrick's estate.[2]

In the critical language in paragraph D of the will, testator devised certain real estate "to my Executors . . to hold and manage for the benefit of my children and to be sold . . . for the best advantage of the beneficiaries of my estate, and the proceeds divided equally among all of my children and their issue. . . ." Appellants contend that by using this language, testator intended that each child, including Joseph, should have an interest contingent upon the child's survival until the date of sale. Because Joseph Patrick died without issue prior to the date of sale, appellants claim that Joseph's estate is not entitled to a share of the proceeds. Appellee and the orphans' court, on the other hand, construe the language of the testator to express his intention that each child should have a vested interest, divested only upon death of a child leaving issue surviving him.

Although both appellants and appellee frame the issue as whether the interest of Joseph is contingent or vested, it is more accurate to inquire whether testator intended to impose a condition of survivorship upon the right to receive a share of the proceeds. *Matter of Estate of Blough*, 474 Pa. 177, 184, 378 A.2d 276, 279 (1977) (characterization of interest as vested or contingent not controlling, "since, in actuality, the court resolves the matter based on whether it finds a condition of survivorship to exist"). This is the approach advanced by Simes and Smith, in The Law of Future Interests § 659, p. 132 (1956):

**2.** We note in passing that the executors of George Patrick's estate, Mildred Patrick and John Patrick, have standing to appeal the decree of the orphans' court since they are "parties aggrieved" in their capacity as beneficiaries of George Patrick's estate. See *Estate of Hain*, 464 Pa. 349, 346 A.2d 774 (1975).

"The issue is commonly stated as whether the gift to the children of A is vested or contingent, but it is more precise to ask whether survival is a condition precedent or whether death with children is a divesting condition attached to a vested interest. If the gift is vested in the children of A subject only to be divested by the death of a child of A leaving issue, then the death of a child of A without leaving issue does not divest the gift. But if survival is a condition precedent, then his death before the time of distribution prevents the gift from taking effect."

All parties acknowledge that in construing a will, the intent of the testator, if it can be ascertained, must prevail. *McDowell National Bank v. Applegate*, 479 Pa. 300, 388 A.2d 666 (1978); *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978); *Blough Estate*, 474 Pa. 177, 378 A.2d 276 (1977). To determine the intent of the testator, "a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding execution of the will and other facts bearing on the question." *Sykes*, supra, 477 Pa. at 257, 383 A.2d at 921; accord, *Pew Trust*, 411 Pa. 96, 107, 191 A.2d 399, 405 (1963) (the court must consider, inter alia, "the condition of his family, the natural objects of his bounty and the amount and character of his property."); *Allen Estate*, 347 Pa. 364, 367, 32 A.2d 301, 303 (1943) ("the question whether or not a testator intended that the ultimate devisee should survive the time of actual distribution in order to possess a vested interest is not to be judged by the mere form of expression employed at any one point, but by the whole scheme of the devise or will"). Each testamentary writing must be viewed individually against the backdrop of its particular facts, since "it is rare that any will has a twin . . ." *Derham Estate*, 435 Pa. 500, 597, 258 A.2d 650, 654 (1969). Canons of construction are to be resorted to only if the testator's intent is unascertainable. *McDowell National Bank*, supra; *Benson Estate*, 447 Pa. 62, 285 A.2d 101 (1971); *Pearson Estate*, 442 Pa. 172, 275 A.2d 336 (1971); *Derham Estate*, supra.

■ We are satisfied that testator intended that every child surviving him was to share in the proceeds from the sale of the real estate. The testator directed that the property be held and managed for "the benefit of my children" and that it be sold "for the best advantage of the beneficiaries of my estate." Clearly the beneficiaries of testator's estate were all six of his children who survived him. Testator further directed distribution of proceeds to "all of my children and their issue." His inclusion of "issue" indicates testator's recognition of the possibility that all of his beneficiaries might not be alive at the time of distribution. In that event, testator's express intent was that if a deceased child left issue surviving, that issue was to take the deceased child's share. There is no expression of intent, in this provision or elsewhere, that the other children were to divide the deceased child's share.

Nor is there any evidence that testator intended to impose a condition of survival upon Joseph or any other child. If such a requirement had been intended, testator could have said so. For example, he could have inserted the words "if living" after his direction to divide the proceeds equally "among all of my children." Such language was utilized by the testatrix in *Estate of Derham*, supra, erroneously relied upon by appellants as support for their position. In *Derham*, the testatrix devised real estate in trust, the income or proceeds of sale to be distributed:

> "among my six sons . . . [naming them], in equal shares, the child or children of a deceased son to take the share his, her or their parent would have taken if living, and, if any of my said sons should die without leaving children him surviving, then and [sic] I order and direct that his share shall be distributed equally among my surviving sons, or their children. . . ."

It must be obvious that the language in the Derham will is easily distinguished from the testamentary provision here. In *Derham*, the testatrix specifically directed that if a child died without leaving issue, the surviving children were to divide his share. Here, testator gave no such instruction.

Rather, testator's wish was that substitution was to occur only if a child died prior to distribution leaving issue who survived him.[3]

Examination of the other portions of the will reveals that George Patrick intended to benefit all of his children equally by his disposition of property in paragraph Second.[4] This testamentary scheme of equal distribution supports the conclusion that a child's interest would be divested only if he or she died leaving issue prior to distribution. This limitation is inapplicable here, as Joseph died without issue.

The orphans' court found that testator intended to give his son Joseph Patrick a vested interest in the proceeds from the sale of the devised real estate. We agree and find no basis for disturbing the determination of the orphans' court.[5]

Decree affirmed. Each party pays own costs.

MANDERINO, J., did not participate in the decision of this case.

3. *In re Dinkey's Estate*, 403 Pa. 179, 168 A.2d 337 (1961), cited by appellants, is also inapposite. There testator, as in *Derham*, directed that "if any child shall die without issue surviving him or her his or her share shall be divided equally among my surviving children, or their children . . . ." Such an instruction is neither expressed or implied in the will of George Patrick.

4. By paragraphs Second A, B and C of his will, testator directed that in the event his wife predeceased him, his real estate at 303 Penn Avenue, 194 Main Street and 186 Main Street was to go to his children Mildred Patrick, John Patrick and Evelyn Mattei, respectively. By paragraph Second E, he devised the residue of his estate to his other three children, Celia Barnes, Matilda Dudzinsky and Joseph Patrick. Paragraph Second D is the subject of this appeal.

5. Appellants raise several other issues which may be disposed of briefly. First, appellants contend that the orphans' court incorrectly applied a theory of estoppel with respect to the assessment of real estate taxes by George Patrick's executors against Joseph Patrick's estate for two years following the death of Joseph Patrick. Appellant's second claim is that the orphans' court erroneously applied the common law preference for vested over contingent interests in reaching its result. Both claims are without merit, as the orphans' court expressly disclaimed reliance on either of these factors in reaching its decision.